IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Joseph Dickerson,                          )
                                           )
        Petitioner,                        )      Case No. 8:11-1412-RBH-JDA
                                           )
        v.                                 )      **REPORT AND RECOMMENDATION**
                                           )      **OF MAGISTRATE JUDGE**
Warden Wayne McCabe, Lieber                )
Correctional Institution,                  )
                                           )
        Respondent.                        )
_____   )

        This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 19.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to

Title 28, United States Code, Section 2254.  Pursuant to the provisions of Title 28, United

States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate

judge is authorized to review post-trial petitions for relief and submit findings and

recommendations to the District Court.

        Petitioner filed his Petition for writ of habeas corpus on June 7, 2011.[1]  [Doc. 1.]  On

October 3, 2011, Respondent filed a motion for summary judgment and a return and

memorandum.  [Docs. 19, 20.]  On October 4, 2011, the Court filed an Order pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner to respond to the

motion and of the possible consequences if he failed to adequately respond.  [Doc. 22.]

Subsequently, Petitioner filed a response in opposition to Respondent's motion for

summary judgment.  [Doc. 29.]  Having carefully considered the parties' submissions and

_____

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on June 7, 2011. [Doc. 1-1 (memo in support of the Petition dated by Petitioner on June 7, 2011); Doc. 1-2 (envelope stamped as delivered to the Lieber Correctional Institution mailroom on June 7, 2011).]

the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated in the Lieber Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Richland County. [Doc. 1 at 1.] Petitioner was indicted on July 17, 2002 for trafficking in cocaine of 28 grams or more but less than 100 grams. [App. 337, 339, 341–42, 349–50.] The indictment was later amended, without objection, to trafficking in cocaine of 10 grams or more but less than 28 grams. [App. 30–31, 337, 339, 341–42, 349–50.] Petitioner proceeded to trial, where he was represented by Robert Boorda ("Boorda").[2] [App. 1, 5.] On September 24, 2002, Petitioner was found guilty as indicted. [App. 174–75.] Petitioner was sentenced to twenty-five years imprisonment, to run consecutive to the twenty-five year sentence he was currently serving for armed robbery convictions. [App. 176–78.]

**Direct Appeal**

Petitioner filed a direct appeal, where he was represented by Aileen P. Clare ("Clare") of the South Carolina Office of Appellate Defense. [App. 324.] Petitioner raised one issue in an *Anders* brief to the South Carolina Court of Appeals: "Did the lower court err by denying appellant's motion for a directed verdict?" [App. 327.] At the same time she

---

[2] Petitioner was tried twice—the first trial ended in a mistrial due to a hung jury. [App. 10, 23.] A portion of the transcript for the first trial appears in the Appendix. [App. 180–201.] Petitioner was represented at both trials by Boorda. [App. 10, 14.]

filed the *Anders* brief,[3] Clare submitted a petition to be relieved as counsel. [App. 331.] Petitioner did not submit a pro se brief. [App. 335; *see* Doc. 20-5 (advising Petitioner of his right to submit a pro se brief).] On June 18, 2004, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted Clare's petition to be relieved. [App. 334–35.] The court issued remittitur on July 20, 2004. [App. 336.]

**PCR Proceedings**

Petitioner filed a pro se application for post-conviction relief ("PCR") on March 28, 2005 [App. 202–11], alleging as his grounds for relief ineffective assistance of counsel claims and a violation of his state and federal constitutional rights [App. 204]. Petitioner alleged the following facts as supporting his grounds for relief:

> 10. (a)
>
> 1. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to advise me and motion the court to suppress evidence seized on the bas[is] of a Fou[r]th Amendment claim.
>
> 2. I rec[ei]ved ineffective assistance of counsel at trial in that counsel denied me the right to present favorable witnesses.
>
> 3. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to hold the state to it[]s burden of proof.
>
> 4. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to adaquately prepare for trial.
>
> 5. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to request for a lesser included offense when the evidence support[ed] this type of jury charge.

---

[3] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), in effect concedes the appeal lacks a meritorious claim.

[6. I received ineffective assistance of counsel at trial] in that counsel failed [to] object to the solic[it]or's closing[] argument which impermissibly shifted the burden of proof to the applicant.[4]

7. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to object to prejudicial hearsay.

8. I rec[ei]ved ineffect[ive] assistance of counsel at trial in that counsel failed to cross examine state's witnesses.

9. I rec[ei]ved ineffective assistance of counsel in that counsel failed to move for a co[]ntinuance to obtain transcript of first trial for impeachment and perjury evidence.

10. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to object to the amendment of the indictment which was true billed by the presentment of perjury evidence.

[11. I received ineffective assistance of counsel at trial] in that counsel fail[ed] to obtain a transcript from Bond Court which could prove my innocence.

12. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to object to prosecutorial misconduct before trial and during the closing argument.

13. I rec[ei]ved ineffective assistance of counsel at trial in that counsel failed to request for dismissal based upon due process claims.

(B)
1. I was denied state and federal rights in that counsel and state prosecutor violated without due process.

[App. 209–11.]  The State filed a return to Petitioner's PCR application on December 21, 2005.  [App. 212–15.]

---

[4] The copy of Petitioner's PCR application in the Appendix is cut off in some places, but checking Petitioner's application against the State's return to the application and the PCR court's order denying relief, the Court has supplied the cut-off information as indicated in brackets in Petitioner's sixth and eleventh grounds for relief.

An evidentiary hearing was held on September 11, 2006, at which Petitioner was represented by Charlie J. Johnson.  [App. 270–83.]  At that hearing, testimony was taken from Katrina D. Rogers ("Rogers"), who was present at the scene of the house during the time Petitioner was arrested and charged, and the matter was continued for Petitioner's counsel to obtain a transcript of Petitioner's first trial.  [*Id.*]  A second evidentiary hearing was held on December 11, 2007, at which Petitioner was represented by Tara D. Shurling.  [App. 217–69.]  At the second evidentiary hearing, the PCR court heard testimony from Petitioner.  [*Id.*]  The record was held open for the introduction of the deposition of trial counsel Boorda.  [App. 219.]  Upon agreement of the parties, the PCR court later closed the record without the deposition of Boorda because Boorda was unavailable and located outside the jurisdiction of the court.[5]  [App. 293.]

On December 3, 2008, the PCR court denied and dismissed Petitioner's PCR application; a formal order of dismissal was issued on December 16, 2008.[6]  [App. 285–307.]  On December 29, 2008, Petitioner filed a Rule 59(e) motion to alter or amend.  [App. 309–12.]  Petitioner argued the PCR court failed to address two arguments: (1) trial counsel was ineffective for failing to introduce the booking report that was written after Petitioner was arrested because the booking report would show that Petitioner was not

---

[5] The parties obtained an order to hold open the record of the PCR hearing to introduce the testimony of Boorda through a deposition, conducted in-person or by telephone, because he was scheduled to be out of the country at the time of the evidentiary hearing on December 11, 2007.  [App. 322–23.]  Subsequently, the State learned Boorda was a civilian contractor for the U.S. State Department indefinitely assigned to Baghdad, Iraq and requested that the record as to Petitioner's PCR application be closed without the introduction of Boorda's testimony.  [App. 293 n.1.]  On September 25, 2008, Petitioner's counsel and the State's counsel agreed to close the record, and the PCR court closed the record upon the parties' agreement.  [*Id.*]  Thus, the PCR court ruled on Petitioner's PCR application without testimony from Petitioner's trial counsel.  [App. 293.]

[6] The formal order of dismissal was filed on December 17, 2008.  [App. 292.]

wearing shoes at the time he was arrested, corroborating his testimony that he had pulled on his cousin's pants before running out the door; and (2) trial counsel was ineffective for failing to move to consolidate the prosecutions of simple possession of marijuana and trafficking in cocaine, which prejudiced Petitioner because, if the prosecutions were consolidated, the jury could have found Petitioner guilty of only the marijuana offense because he admitted his guilt as to that offense but maintained his innocence as to the cocaine offense. [App. 309–10.] On May 29, 2009, the PCR court amended its previous order to include discussion of these two claims and denied Petitioner's PCR application as to the additional grounds for relief. [App. 314–19.]

On December 31, 2009, M. Celia Robinson filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court. [Doc. 20-6.] The petition raised the following issue:

> Did the PCR judge err in denying relief despite trial counsel's provision of ineffective assistance of counsel in that he failed to obtain or to present during trial exculpatory testimony such that the result of the proceeding is cast in doubt as the result of ineffective assistance of counsel?

[*Id.* at 3.] The State filed a return to the petition for writ of certiorari on February 18, 2010. [Doc. 20-7.] Certiorari was denied on April 7, 2011 [Doc. 20-8], and remittitur was issued on April 25, 2011 [Doc. 20-9].

**Petition for Writ of Habeas Corpus**

This Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on June 7, 2011. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

Ground One: The Trial Court's denial of a directed verdict was objectively unreasonable based on the facts presented during trial; and the State Appellate Court's subsequent denial was also objectively unreasonable based on the facts presented during trial.

Supporting Facts: Petitioner was living with his cousin, Satoshi Bush, in his cousin's mobile home trailer. The Police had come to the home to serve an arrest warrant on Petitioner's cousin at which time Petitioner's cousin had been arrested outside the residence.

During this event Petitioner was inside sleep[ing] on his cousin's couch. The door being locked, Petitioner's cousin knocked on the door to ask Petitioner to let him in. Petitioner [awoke] and looked outside and saw his cousin with two other individuals whom Petitioner did not know.

Petitioner quickly got up and and pulled on a pair of pants lying near the couch. Upon opening the door, Petitioner discovered the two unknown individuals with Petitioner's cousin were in fact Police Officers.

Petitioner knew that he (petitioner) had an outstanding warrant in Lexington County and thought the Police were there to arrest him. Petitioner ultimately fled the residence barefooted. Petitioner was arrested a short time later and Officers claimed to have found more than 13 grams of cocaine and $600 in one of the pockets of the pants Petitioner had slipped into.

A small amount of marijuana and money was found in the other pocket of the pants. Petitioner accepted ownership of the marijuana, but denied any knowledge of the cocaine. (emphasis supplied).

During trial Petitioner testified that he and his cousin always were each others clothes and sometimes they did dress in the livingroom and left clothes just lying around.

Petitioner testified that when he awoke he just pulled on a pair of pants that had been lying near him, but he did not know there was cocaine in the pants. Petitioner timely moved for a directed verdict. . . .

<u>Ground Two</u>: The State Courts erred in failing to find counsel ineffective when counsel failed to obtain and present exculpatory testimony, thus denying Petitioner the Right to present favorable witness for his defense.

<u>Supporting Facts</u>: . . . During the PCR hearing Katrina D. Rogers testified that she is an E-4 officer with the South Carolina National Guard. In September, 2006, Rogers had been in the military for three years and she was on [active] deployment.

The PCR Court found that Roger's testimony would have been helpful to the defense [if] presented during trial. On September 11, 2006, Rogers testified under oath before the Honorable John C. Hayes. Rogers testified she present at the scene in question when Petitioner was arrested. Rogers testified she was outside the trailer with Petitioner's cousin (Bush).

Rogers testified that Bush was her boyfriend and Bush was the individual the police were looking for. Rogers testified Petitioner was inside asleep on the couch. Rogers testified she was aware that Petitioner had claimed that the money and drugs found in the pockets of the pants Petitioner had pulled on did [not] belong to Petitioner.

Rogers testified that she had personal knowledge of the [fact] that the money and drugs found did not belong to Petitioner. Rogers testified "the morning before me and Mr. Bush left, Bush [put] the drugs and money in his pocket that was like on the chair or couch or wherever it was. Rogers testified Petitioner was asleep the whole time. Rogers testified Bush went into the kitchen and did whatever he was doing and right before they were getting ready to walk out the door Bush went back and put some more drugs and a pistol in his room. Rogers testified that as they were leaving is when they were pulled over.

Rogers agreed that she personally saw Bush put money and drugs into a pocket of a pair of pants that were on the chair beside the couch where Petitioner was sleeping. Rogers testified she was never contacted by Petitioner's trial attorney with regards to what she had witnessed. Rogers testified that she was on active deployment and when she had returned home in 2006 she had asked about whatever happened to

8

Petitioner. Rogers testified that she had not known of Petitioner's sentence, but that she learned he was going to court in 2006, she resolved to offer her testimony on his behalf.

The PCR Court found that Roger's testimony "was favorable to Petitioner." However, the PCR Court found that counsel was not ineffective in failing to obtain and present exculpatory testimony at trial, although the testimony was helpful to the defense. The PCR Court explained that during the first trial which resulted in a mistrial, Rogers did not testify and that further Petitioner had mentioned Rogers during the first trial only during pre-trial matters. The PCR Court found that trial counsel's failure to obtain Rogers "favorable" testimony was not ineffective because Petitioner did not present trial counsel with her name until the week prior to the second trial. This conclusion is quite confusing because the PCR Court had readily acknowledged that Rogers named was mention in pre-trial in the first trial but then the PCR unreasonably concluded that counsel had not be presented with Rogers name until the week prior to the second trial. The PCR Court further concluded that trial counsel was not ineffective because the trial transcript revealed that trial counsel had informed the trial judge Rogers could not be located.

The PCR and subsequent reviewing courts decision was objectively unreasonable in light of the evidence presented in the state court record.

Clearly counsel's failure to obtain and present favorable testimony was deficient performance that undermind the confidence in the outcome, as there is a reasonable probabilty the results of the trial could have been different had counsel presented Rogers "favorable" testimony. The failure to present a complete defense denied Petitioner his right to a fair trial.

Ground Three: The State PCR Court erred in failing to find counsel ineffective for failure to adequately prepare for trial.

Supporting Facts: Petitioner asserts he was denied the effective assistance of counsel when trial counsel failed to adequately prepare for trial. This case resulted in (2) two trials. Petitioner's first trial resulted in a mistrial because the jury was hung and couldn't reach a decision. During the PCR hearing

Petitioner testified that when he was getting ready for the first trial he barely saw his trial counsel.

The one time Petitioner did meet with counsel was at Evans Correctional Facility while serving time for an unrelated offense. Subsequently between the first and second trial Petitioner only seen counsel one time for approximately 10 to 15 minutes. Petitioner testified that during counsel's representation of Petitioner counsel [never] provided Petitioner with any discovery materials nor discuss any type of trial strategy or what evidence the state may or may not have had.

Counsel's only real concern was that Petitioner take a plea, which Petitioner instantly declined. The PCR Court unreasonably found that since Petitioner's first trial resulted in mistrial, then counsel basically did a good job and therefore was not ineffective during the second trial. The PCR Court's decision was unreasonable based on the fact that the Court did not independently evaluate counsel's performance during the second trial, but merely assumed counsel wasn't ineffective. The PCR Court's determination was objectively unreasonable based on the evidence presented in the state court record.

Ground Four: The PCR Court erred in failing to find counsel ineffective for failing to object to certain evidence, mainly counsel's failure to challenge the handling of the drugs.

Supporting Facts: Petitioner asserts counsel was ineffective for failing to object to certain evidence, mainly counsel's failure to challenge the handling of the drugs. Petitioner testified that when the officers had come into the trailer, they seized approximately two guns and four or five packages of cocaine. The first package was said to have been Bush's and he was charged with trafficking, and the other package of cocaine was a crack charge too.

Petitioner testified that the cocaine he was alleged to have been in possession of was nine (9) individual bags. Counsel should have challenged the fact that once the SLED chemist combined [all] nine packages into [one] the chemist actually made it [one] substance without knowing whether or not all nine packages were individually cocaine or not. The prejudice incurred is that once the chemist mixed all nine bags together is what created the total weight of the substance itself and allowed the jury to believe that Petitioner was in

10

possession of nine bags of cocaine. Counsel should have independently tested all nine bags separately in order to determine whether or not all nine bags were in fact cocaine. In the alternative counsel should have moved to suppress the drugs once the chemist combined all nine bags, thus tainting the evidence and ultimately manufacturing evidence for the state.

The PCR Court's decision was objectively unreasonable based on the evidence presented in the state court record.

Ground Five: The PCR Court erred in failing to find counsel ineffective for failing to obtain a copy of Petitioner's first trial transcript in order to impeach the State's witnesses during the second trial.

Supporting Facts: Petitioner asserts he was denied the effective assistance of counsel when counsel failed to request a continuance in order to obtain a copy of his [first trial] transcript that resulted in a mistrial since the jury was hung and could not reach a verdict; for impeachment purposes of his subsequent second trial. During PCR Petitioner testified that he had argued to Judge Cottingham for a continuance to obtain the transcript in order to properly impeach the State's witnesses.

Petitioner testified that during the second trial counsel failed to cross-examine two of the state's witnesses. Petitioner testified that he felt [if] counsel would have obtained the transcript from the first trial, it would have proved what the chemist was trying to say and counsel could have properly impeached the chemist during the second trial. The chemist testified that he tested the drugs first, but he said he tested them and then combined them all and just put all nine bags separately to the side so the jury can see what bags they were. Petitioner testified that at the first trial the chemist testified he put all nine bags together and then tested the combined substance to reach the conclusion it was all cocaine. Yet, at the second trial the chemist testified he tested the bags individually. The PCR Court unreasonably found that Petitioner put forth no evidence to support this claim. To the contrary Petitioner gave specific testimony in support of this allegation. Petitioner could not produce the first trial transcript because counsel [never] motioned the court for a copy of it and since

then the time had lapsed within which to obtain one since the tapes would have been destroyed.

Petitioner also testified that the first trial transcript could have also been used for impeachment purposes as with one of the State's law enforcement officers. At the first trial the arresting officer testified that Petitioner didn't have any boots on and that Petitioner looked like he was asleep and during the second trial the officer was allowed to tighten up his testimony consistent with the state's theory.

When questioned as to why counsel did not obtain a copy of the first trial transcript, Petitioner testified counsel gave no reason. Petitioner testified that during the second trial Judge Floyd made counsel be there with Petitioner.[7] Petitioner told Judge Floyd he wasn't satisfied with his attorney, just as in the first trial. Judge Floyd told Petitioner "I'm going to try to make things better" and he ordered Petitioner to stay the night in the county jail and that's when he asked Counsel to get his "booking reports" and you'll see how I was booked in, "with no shoes". Petitioner also advised counsel that the bond hearing transcript would also show where Bush [confessed] to [all] the drugs found. This confession was made to the bond hearing judge, yet the bond hearing judge said that needed to be handled in another court.

The PCR Court's decision was objectively unreasonable based on the facts presented in state court, as had counsel obtained the transcript for impeachment purposes and properly impeached and cross-examined the State's witnesses there is a reasonable probability the results of the proceedings would have been different.

Ground Six: The PCR Court erred in failing to find counsel ineffective for failing to obtain a copy of the Bond hearing transcript which would corroborated Petitioner's version of events.

Supporting Facts: Petitioner asserts he was denied the effective assistance of counsel when counsel failed to obtain a copy of the bond hearing transcript that would have

---

[7] The Court notes Judge Floyd presided over Petitioner's first trial [App. 180] and Judge Cottingham presided over Petitioner's second trial [App. 1].

corroborated Petitioner's version of events on the night in question. This evidence was all the more critical since Petitioner's defense was one of credibility.

Petitioner testified that had counsel of obtained the bond hearing transcript it would have been revealed that Bush had confessed to the bond hearing judge that all the drugs found were his and not Petitioner's, but the bond hearing judge said that's all fine and well but that will have to be taken up in another court. During the preliminary stages of PCR Petitioner had requested that PCR counsel to obtain the bond hearing transcript but PCR counsel said the records were too old as too much time had elapsed.

Clearly this evidence went to heart of the case as it was extremely relevant to guilt and innocence and counsel should have obtained the bond hearing transcript. Counsel did not testify during the PCR hearing so there can be nod logical reasoning as to why counsel would not have obtained such a piece of critical evidence. The PCR Court's decision objectively unreasonable.

[*Id.*; Doc. 1-1 (alterations in original).] As previously stated, Respondent filed a motion for summary judgment on October 3, 2011 [Doc. 19], which is now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail,

it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

14

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

*Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

        (A) the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (i) there is an absence of available State corrective process; or

                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[8] Further, strict time deadlines govern direct appeal and the filing

---

[8]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will

of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state

---

not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Defaulted Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent argues Grounds Three, Four, Five, and Six are procedurally defaulted because they were not raised to the South Carolina Supreme Court following the denial of Petitioner's PCR application. [Doc. 20 at 17–19.] The Court agrees.

In Grounds Three through Six, Petitioner argues the PCR court erred by failing to find his trial counsel was ineffective based on counsel's failure to adequately prepare for trial; object to certain evidence—namely, the handling of the drugs; obtain a copy of the

22

transcript from Petitioner's first trial to impeach the State's witnesses during the second trial; and obtain a copy of the bond hearing transcript, which corroborated Petitioner's version of the events. Grounds Three, Five, and Six were raised and ruled upon by the PCR court [App. 299–305] but were not presented to the South Carolina Supreme Court in Petitioner's subsequent petition for writ of certiorari [*see* Doc. 20-6 at 3 (raising only ineffective assistance of counsel claim based on counsel's failure to present exculpatory testimony)]. Ground Four—an ineffective assistance claim based on counsel's failure to object to the handling of the drugs—was not raised to the PCR court and was not presented to the South Carolina Supreme Court. Because Grounds Three through Six were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.[9] *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. In this case, Petitioner

---

[9] Petitioner argues Respondent cannot assert procedural default as a defense because the South Carolina Supreme Court denied Petitioner's petition for writ of certiorari without applying or relying on a state procedural bar. [Doc. 29 at 10, 12.] However, as explained above, if a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and, absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Coleman*, 501 U.S. at 731–32; *Wainwright*, 433 U.S. at 87. While the exhaustion requirement is technically met in such an instance, the rules of procedural bar apply, barring the claim from federal habeas review. *Teague*, 489 U.S. at 297–98; *Matthews*, 105 F.3d at 915 (citation omitted). Here, because Petitioner failed to raise Grounds Three through Six to the South Carolina Supreme Court and the South Carolina Supreme Court would not allow Petitioner to raise them in a new petition for writ of certiorari to that court, *see* S.C. Code Ann. § 17-27-90; *Aice*, 409 S.E.2d at 394, Petitioner is procedurally barred from raising those claims in this Court.

has failed to articulate cause for procedurally defaulting on Grounds Three through Six. Petitioner filed a petition for writ of certiorari in which these issues could have been raised but were not, even though one issue was properly raised. Petitioner argues his PCR appellate counsel raised only one issue in a meritorious petition for writ of certiorari, which precluded Petitioner from filing a pro se brief raising additional issues. [Doc. 29 at 10.] However, Petitioner's counsel's failure to raise additional issues in the petition for writ of certiorari to the South Carolina Supreme Court does not amount to an objective factor *external* to the defense that impeded efforts to comply with South Carolina's procedural rules. *See Murray*, 477 U.S. at 488. Thus, Petitioner has failed to demonstrate sufficient cause for failing to raise Grounds Three through Six to the South Carolina Supreme Court.

Further, Petitioner argues he is actually innocent and that Boorda's errors resulted in Petitioner's conviction. [Doc. 29 at 13.] Claims of actual innocence are subject to a demanding standard. *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998). To be credible, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A reviewing court must evaluate the new evidence alongside any other admissible evidence of the defendant's guilt . . . and may grant relief only where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wilson*, 155 F.3d at 404–05 (quoting *Murray*, 477 U.S. at 496) (internal citation omitted).

Here, Petitioner has failed to produce new evidence, and a review of the record does not support a showing of actual innocence. Petitioner was found guilty of trafficking in cocaine over 10 grams but less than 28 grams. [App. 174–75.] Petitioner testified at his trial and claimed the cocaine, which was found in the pocket of the pants he was wearing

when he was arrested, was not his and that he did not know the cocaine was in the pants pocket. [App. 121, 127.] Petitioner testified he was staying at his cousin's home in Richland County because there was a warrant for his arrest in Lexington County [App. 123–24], and on the morning of his arrest, he was sleeping on the couch when his cousin woke him up by calling to him from outside the home [App. 124]. Petitioner testified he got up and put on a pair of pants that were laying there and opened the door. [App. 125.] Petitioner testified his cousin came in with two other men, and when Petitioner realized the other men were police officers, he ran from the home. [App. 126.] Petitioner further testified his cousin would wear his clothes all the time [App. 127], and the cocaine belonged to his cousin [App. 136]. Petitioner testified that if he had known there was cocaine in his pocket, he would have gotten rid of it while he was running from the police. [App. 127, 129–30.] Petitioner also testified the items that were his were the $60 and marijuana found in the front left pocket of the pants he was wearing and a cell phone found on the ground near him when he was arrested, but he did not know about the $600 and cocaine found in the front right pocket of the pants. [App. 127, 137, 141; *see* App. 84.] Finally, Petitioner admitted he had used several false names in the past, including initially giving police a false name while being booked on the instant offense. [App. 131–32, 134–35.]

In contrast, two of the narcotics agents involved in Petitioner's arrest testified Petitioner opened the door within a few seconds of his cousin knocking on the door and calling to him. [App. 64–65, 76.] The agents testified that, after opening the door, Petitioner looked startled and nervous and backed up to sit on the couch. [App. 66, 76–77.] One agent testified it looked as if Petitioner put his hands under the couch cushion, and the agent asked Petitioner to stand up so the agent could check the couch. [App. 77.] The

25

agent further testified that when he found a gun under the cushion and grabbed the gun, Petitioner took off out the door of the home. [App. 79.] The agent chased him, and the agent and another police officer caught Petitioner a short time later. [App. 80–83.] The agent advised Petitioner he was under arrest for the marijuana the agent had observed in plain view in Petitioner's cousin's home, and a search of Petitioner incident to his arrest revealed $60 and marijuana in the front left pocket of the pants he was wearing; $600 and nine baggies of cocaine in the front right pocket of the pants he was wearing; and a cell phone found on the ground near him. [App. 83–84; *see* App. 65, 76.]

At a hearing regarding Petitioner's PCR application, Rogers testified as a witness to some of the circumstances surrounding Petitioner's arrest. [App. 272–83.] Although she was at Petitioner's cousin's home at the time of Petitioner's arrest, Rogers did not testify at either of Petitioner's trials. [*See* App. 272–73.] Rogers testified that, on the morning of Petitioner's arrest, while he was asleep, she saw his cousin put the drugs and money in the pocket of a pair of pants that were on a chair.[10] [App. 277–78, 280.] Rogers also testified she was aware that Petitioner's position was that the money and cocaine found in his pants pocket when he was arrested was not his and that the State's position was that Petitioner was in possession of the drugs and the drugs belonged to Petitioner. [App. 276–77.]

In light of this evidence, Petitioner is unable to demonstrate actual innocence. First, the trial testimony fails to establish Petitioner did not have the requisite knowledge to be found guilty of trafficking in cocaine. Second, Rogers's testimony fails to establish that

---

[10] Rogers did not specify which drugs and money—the $60 and marijuana, the $600 and cocaine, or all the drugs and money—she witnessed Petitioner's cousin put in the pants pocket. [*See* App. 277–78, 280.] The prior questioning suggests Rogers was referring to the cocaine and all the money [*see* App. 276], but her testimony is not clear.

Petitioner's cousin put the nine baggies of cocaine found on Petitioner when he was arrested into the pocket of the pants Petitioner was wearing when he was arrested—Rogers testimony does not specify a quantity or type of drugs nor does her testimony state that, at the time of his arrest, Petitioner was wearing the pants in which she saw Petitioner's cousin put the drugs and money. Therefore, Petitioner has failed to meet his burden of showing sufficient cause and prejudice or actual innocence to overcome a procedural bar, and Grounds Three, Four, Five, and Six are procedurally barred from consideration by a federal habeas court and should be dismissed. *See Murray*, 477 U.S. at 496.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this

> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Ground One*

In his first ground for relief, Petitioner argues the trial court improperly denied his motion for a directed verdict.[11] The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in Ground One.

---

[11] Ground One is properly before this Court because Petitioner's appellate counsel raised, in an *Anders* brief to the South Carolina Court of Appeals, the denial of the directed verdict motion as the sole appealable claim. [App. 327.] The Court of Appeals dismissed the appeal, finding there were no appealable issues arguable on their merits. [App. 334–35.]

Petitioner's claim is cognizable as a due process claim challenging the sufficiency of the evidence to convict. *See Jackson v. Virginia*, 443 U.S. 307, 321, 322 (1979) (holding "it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim," where the federal constitutional claim is a violation of due process). "Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson*, 155 F.3d at 405 (quoting *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion)). "[A] defendant is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Id.* at 406 (quoting *Jackson*, 443 U.S. at 324).

Upon review, the Court concludes the trial court's decision to deny Petitioner's motion for a directed verdict was not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts before the court. At trial, Petitioner moved for a directed verdict on the basis that the State had failed to prove Petitioner knew he was in possession of cocaine. [App. 114, 142.] The judge stated there was an inference that Petitioner knowingly possessed the cocaine and sufficient evidence to send the case to the jury, and accordingly, the judge denied the motion at the close of the State's case and at the close of the defense's case. [App. 114, 142.]

The trial judge's denial is supported by the record. As previously stated, Petitioner testified the cocaine found in the pocket of the pants he was wearing when he was arrested was not his and that he did not know the cocaine was in the pants pocket. [App. 121, 127.] Petitioner testified that, on the morning of his arrest, he was sleeping on the couch when

his cousin woke him up by calling to him from outside the home. [App. 124.] Petitioner got up and put on a pair of pants that were laying there and opened the door. [App. 125.] Petitioner's cousin came in with two other men, and when Petitioner realized the other men were police officers, he ran from the home. [App. 126.] Petitioner further testified his cousin would wear his clothes all the time [App. 127], and the cocaine belonged to his cousin [App. 136]. Petitioner testified that if he had known there was cocaine in his pocket, he would have gotten rid of it while he was running from the police. [App. 127, 129–30.] Petitioner also testified the sixty dollars and marijuana found in the other pocket of the pants were his. [App. 127, 137, 141; *see* App. 84.] Petitioner admitted he had used several false names in the past, including initially giving police a false name while being booked on the instant offense. [App. 131–32, 134–35.]

Two of the narcotics agents involved in Petitioner's arrest testified Petitioner opened the door within a few seconds of his cousin knocking on the door and calling to him. [App. 64–65, 76.] The agents testified that, after opening the door, Petitioner looked startled and nervous and backed up to sit on the couch. [App. 66, 76–77.] When it appeared Petitioner put his hands under the couch cushion, and one agent asked Petitioner to stand up so the agent could check the couch. [App. 77.] The agent testified he found a gun under the cushion, and when he grabbed the gun, Petitioner took off out the door of the home. [App. 79.] The agent chased him, and the agent and another police officer caught Petitioner a short time later. [App. 80–83.] The agent advised Petitioner he was under arrest for the marijuana the agent had observed in plain view in the home, and a search of Petitioner incident to his arrest revealed $60 and marijuana in the front left pocket of the pants he was

wearing; $600 and nine baggies of cocaine in the front right pocket of the pants he was wearing; and a cell phone on the ground near him. [App. 83–84; *see* App. 65, 76.]

In light of the evidence presented at trial,[12] the Court finds a reasonable juror could conclude Petitioner was guilty beyond a reasonable doubt. *See Wilson*, 155 F.3d at 406 ("[A] defendant is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)). A reasonable juror could have concluded Petitioner was lying about not knowing about the cocaine or that the cocaine was otherwise fairly attributable to Petitioner. Thus, the Court concludes Petitioner is not entitled to habeas corpus relief based on Ground One.

### Ground Two

In his second ground for relief, Petitioner argues the PCR court erred by failing to find his trial counsel was ineffective for failing to obtain and present exculpatory testimony. The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in Ground Two.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s

---

[12] The Court notes it is reviewing the trial court's denial of Petitioner's directed verdict motion, and therefore, in evaluating the trial court's decision, the Court cannot consider Rogers's testimony, which was first presented to the PCR court.

standard."[13]  *Richter*, 131 S. Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated Petitioner's counsel's performance under the standard set forth in *Strickland*.  [App. 295–99.]  The PCR court found that, while Rogers's testimony was favorable to Petitioner, Petitioner had failed to meet his burden of demonstrating Boorda's performance was deficient for failing to present Rogers and Petitioner's cousin as witnesses.  [App. 298–99.]  To reach this conclusion, the PCR court

---

[13] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

considered the totality of the circumstances surrounding Boorda's failure to present Rogers and Petitioner's cousin as witnesses:

> . . . [The trial transcript reflects Petitioner] ma[d]e[] no mention of Ms. Roger[s]'s presence in the home during his trial, except during pretrial matters. According to the evidence, Ms. Rogers did not testify at the first trial which ended in a mistrial. Furthermore, [Petitioner] did not provide trial counsel with the name of Ms. Rogers as a potential witness until the week before the second trial. At [Petitioner's] second trial, the transcript reveals that Ms. Rogers could not be located and the Court conducted an extensive inquiry into trial counsel's efforts to locate Ms. Rogers.
>
> [Petitioner's] trial counsel testified to the following with respect to his efforts to locate Ms. Rogers: (1) Ms. Rogers was not listed anywhere in the discovery; (2) he was given Ms. Rogers' name the Friday before trial; (3) he drove from Bennettsville, where [Petitioner] was incarcerated, to the Midlands Technical School where Ms. Rogers allegedly attended; (4) he spoke with someone in Admissions Records and was told that they had no record of a student by the name of Katrina Rogers; (5) he checked the phone book but could not find her; (6) he spoke with [Petitioner's] wife, who also was going to search for Ms. Rogers; and (7) no one had been able to locate her. According to the testimony in the trial transcript, [Petitioner's] trial counsel spent five to six hours searching for Ms. Rogers. Furthermore, the trial court found that [Petitioner's] trial counsel had made reasonable efforts to locate the witness, and declined to continue the case on that basis.
>
> . . . [As to Petitioner's cousin, Petitioner] failed to present the witness at the PCR hearing or otherwise offer the witness'[s] testimony in accordance with the rules of evidence at the PCR hearing; and thus, [Petitioner] failed to establish prejudice from the witness'[s] failure to testify at trial. See Bannister [v. State], 333 S.C. 298, 509 S.E.2d 807 [(1998)]. Additionally, the trial transcript from the first trial indicates that [Petitioner's] trial counsel testified that he explored [Petitioner's] cousin as a possible witness. Trial counsel stated that he personally met with the witness and determined that the witness was detrimental to [Petitioner's] case because the

> witness would testify that he did not know about the drugs and
> that the drugs did belong to [Petitioner].

[*Id.*]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The PCR court accurately described Boorda's representations to the trial court regarding his efforts to locate Rogers [App. 11–14, 21–22] and his belief that Petitioner's cousin would be a detrimental, rather than favorable, witness [App. 10–11]. The record fails to indicate Boorda could have done more to present favorable testimony from these witnesses.[14] Without an indication that Boorda's performance was deficient, the PCR court had no basis to conclude that Boorda provided ineffective assistance of counsel for failing to find and present exculpatory testimony. Therefore, the Court concludes the PCR court's decision

---

[14] Petitioner argues Boorda's attempt to locate Rogers was deficient because Rogers's name should have been in the police report because she was at the scene. [Doc. 29 at 27–28.] However, Boorda represented to the second trial court that Rogers's name did not appear in the discovery materials [App. 13–14, 22], and Petitioner has failed to demonstrate Boorda had Rogers's name as a witness before Petitioner provided her name to Boorda a few days before Petitioner's second trial [*see* App. 11–12, 21–22].

was not an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Two.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

May 18, 2012
Greenville, South Carolina